**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

THOSE AMAZING PERFORMERS, LLC, )
d/b/a Team AeroDynamix, )
 )
Plaintiff, )
 )
vs. ) NO. 2:15-CV-273
 )
INTERNATIONAL COUNCIL OF AIR )
SHOWS, INC., )
 )
Defendant. )

**OPINION AND ORDER**

This matter is before the Court on the Motion to Remand to State Court, filed by the plaintiff, Those Amazing Performers, LLC, d/b/a Team AeroDynamix, on August 17, 2015. (DE #13.) For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

On or about June 17, 2015, the plaintiff, Those Amazing Performers, LLC, d/b/a Team AeroDynamix ("AeroDynamix"), filed a complaint in the Lake County Indiana Superior Court (45D05 1506PL0048). (DE #4.) The complaint alleges claims of tortious interference with a contract, defamation, defamation *per se*, libel, and slander against the defendant, International Council of Air Shows ("ICAS"). (*Id*. at 1.) AeroDynamix is described as a North

Carolina limited liability company with its principal place of business in Gold Hill, North Carolina. (*Id.* at 1.) ICAS is described as a not-for-profit corporation incorporated in the state of Wisconsin with its principal place of business in Leesburg, Virginia. (*Id.*) AeroDynamix, a formations aerobatic air show team that performs choreographed flight routines in air shows throughout the United States, consists of ten pilots,[1] each of whom is required to hold special certificates issued by the Federal Aviation Administration ("FAA") called Statements of Aerobatic Competency cards ("SAC cards"). (*Id.* at 2.) All ten AeroDynamix pilots passed their reevaluation and received a valid SAC card for 2015. (*Id.*) The FAA implemented the Aerobatic Competency Evaluation Program ("ACE program") to regulate the issuance of SAC cards, and it granted ICAS, a private corporation, the authority to assist the FAA in evaluating pilots under the ACE program. (*Id.* at 2.) According to the complaint, several of the ICAS members responsible for making recommendations to the FAA regarding the issuance, reevaluation, or rescission of SAC cards are direct competitors of AeroDynamix, which creates a conflict because those individuals have a direct economic interest in preventing AeroDynamix from performing in air shows across the country. (*Id.* at 2-4.)

---

[1] The ten pilots are Mike Stewart, Greg Reese, John Hornbeck, Jerry Morris, Tad Sargent, Tom Dubrouillet, Len Leggette, Danny Kight, Robert Gibbons, and Martin Walker. (DE #4, p. 2.)

On March 29, 2015, two AeroDynamix pilots were involved in a minor incident at an air show in Alabama. (*Id*. at 4.) A group of ICAS members, including some members alleged to be direct competitors of AeroDynamix, recommended that the FAA temporarily revoke the SAC cards of all ten AeroDynamix pilots, and on April 8, 2015, a memorandum indicating as such was sent to the FAA inspector. (*Id*.) On April 10, 2015, pursuant to the memorandum, the FAA rescinded the SAC cards of all ten AeroDynamix pilots. (*Id*. at 5.) On April 29, 2015, nine of those pilots filed an appeal of the FAA decision to the National Transportation Safety Board; at the time of the filing of the complaint, the appeals were still pending. (*Id*.)

As a result of the rescission of the SAC cards, AeroDynamix alleges that its pilots have been deprived of the ability to fly in the following previously scheduled air shows:

- Thunder Over Louisville in Louisville, Kentucky, on April 18, 2015
- SUN 'n FUN in Lakeland, Florida, from April 22 to April 26, 2015
- Good Neighbor Day Air Shoe in Atlanta, Georgia, on May 20, 2015
- Dover International Speedway in over, Delaware on May 31, 2015
- Rockford Air Show in Rockford, Illinois, on June 6 and June 7, 2015

(*Id*. at 5-6.) The complaint also indicates that the organizers of the Cherry Festival Air Show in Traverse City, Michigan, "recently" cancelled AeroDynamix's performance. (*Id*. at 6.) According to AeroDynamix, the unreasonable delay in re-issuing the SAC cards further jeopardized the following scheduled air shows for 2015:

3

- Gary South Shore Air Show in Gary, Indian on July 11, 2015
- Milwaukee Air & Water Show in Milwaukee, Wisconsin, from July 25-26, 2015
- Wings over Halls in Halls, Tennessee, on August 8, 2015
- Chicago Air & Water Show in Chicago, Illinois, from August 15-16, 2015
- Lycoming County Balloonfest & Air Show in Williamsport, Pennsylvania, on September 12, 2015
- Memphis Air Show in Memphis, Tenessee, from September 26-27, 2015
- Boshears Skyfest in Augusta, Georgia, from October 17-18, 2015
- Blue Angels Homecoming Air Show in Pensacola, Florida, from November 7-8, 2015
- ICAS Convention in Ls Vegas, Nevada, from December 6-9, 2015

(*Id.*)

ICAS planned to release findings and recommendations from its investigation into AeroDynamix on June 18, 2015;[2] it is alleged that those findings, which stem from a conflict of interest among ICAS's members who are direct competitors of AeroDynamix, were designed to destroy AeroDynamix's performances and severely and irreparably damage its business reputation. (*Id.* at 6-7.) According to the complaint, ICAS intentionally sought to injure AeroDynamix through its allegedly improper recommendation to the FAA for the rescission of the pilots' SAC cards, effectively crippling its ability to perform air shows. (*Id.* at 7.)

AeroDynamix alleges that ICAS's conduct interfered with the contractual relationships of the organizers of the air shows identified above, and it further alleges that ICAS's statements, documents, and memorandums – issued to the FAA and others with the

---

[2] According to the complaint, the findings were to be released on June 18, 2015, one day after the complaint was filed in state court; the matter was not removed to this Court until July 17, 2015. (DE #4, p. 7; DE #2.)

4

intent of damaging AeroDynamix's reputation – were defamatory. (*Id.* at 8-21.) As such, AeroDynamix requests compensatory damages, all applicable exemplary and/or punitive damages, attorney fees, costs, and injunctive relief. (*Id.*)

On July 17, 2015, ICAS filed a notice of removal, stating its basis for removal as diversity jurisdiction under 28 U.S.C. section 1332(a) and also pursuant to 28 U.S.C. section 1331 because the claims allegedly involve issues subject to federal field preemption. (DE #2.) As to diversity jurisdiction, the notice lists the citizenship of each member of AeroDynamix and concludes that, because AeroDynamix is a limited liability company organized and existing under the laws of North Carolina with its principal place of business there as well, AeroDynamix is a citizen of the states of North Carolina, South Carolina, and Georgia. (*Id.* at 2-3.) ICAS is described as a not-for-profit corporation incorporated in the state of Wisconsin, with its principal place of business in Virginia. The notice states that, based on the alleged contractual interference with at least thirteen air shows, compensatory damages alone are worth at least $104,000. (*Id.* at 3.) It arrives at this number by noting that, upon information and belief, AeroDynamix is paid at least $8,000 per show. (*Id.*) ICAS also points to the allowance of punitive damages under Indiana law of up to the greater of $50,000 or three times the amount of compensatory damages awarded. (*Id.* at 4; Ind. Code 34-51-3-4.) Thus, it states, in light of the fact that AeroDynamix has requested

compensatory and punitive damages, there is a reasonable probability that the amount in controversy exceeds $75,000 exclusive of costs and interest. (*Id*.) In addition to diversity jurisdiction, the notice also states that, although the claims in the complaint are pled as state common law claims, they involve actions taken by ICAS in its role as appointed by the FAA related to aerobatic aviation safety, and are thus subject to and barred by federal field preemption. (*Id*.)

On August 17, 2015, AeroDynamix filed the instant motion to remand to state court, arguing that there is no diversity jurisdiction because ICAS has failed to establish that the amount in controversy at the time of removal exceeded $75,000. (DE #13 at 1.) It also argues that ICAS's federal field preemption argument has no merit because AeroDynamix's claims arise from state tort law. (*Id*. at 2.) ICAS filed its response to the motion to remand on August 31, 2015, setting forth its arguments related to field preemption (DE #17, pp. 4-20) and diversity jurisdiction (*Id*. at 20-25). In support of its contention that the amount in controversy exceeds $75,000, ICAS has provided the affidavit of John Cudahy ("Mr. Cudahy"), the president of ICAS, who indicates that he has personal knowledge, based on his familiarity with the air show industry, of the typical market rates for payment of performance groups such as AeroDynamix. (DE #18-1, p. 1.) He indicates that these types of groups are paid anywhere from $8,000 to $15,000 per show. (*Id*.) Mr. Cudahy also states that the annual

6

profit to ICAS from the ACE program was $70,470 for FY 2015, and he anticipates that this profit will remain the same or increase in future years. (*Id*. at 2.) Accordingly, Mr. Cudahy estimates that a potential injunction enjoining ICAS from communicating to the FAA under the ACE program would likely cost ICAS in excess of $70,000 per year. (*Id*.) Plaintiff filed its reply in support of the motion to remand on September 8, 2015, reiterating its position that federal field preemption does not apply because ICAS has misinterpreted the nature of AeroDynamix's tort claims (DE #19, pp. 2-15) and arguing that ICAS did not meet its burden in demonstrating that the amount in controversy has been satisfied (*Id*. at 15-21). After being granted leave to do so, ICAS filed a supplemental brief in opposition to AeroDynamix's motion to remand on October 5, 2015, arguing for the first time that this Court also has jurisdiction pursuant to 29 U.S.C. section 1331 because ICAS was acting as a federal officer and has a colorable federal defense which makes removal proper under the federal officer removal statute as set forth at 28 U.S.C. section 1442(a)(1). (DE #25.) AeroDynamix filed its response to the supplement on October 6, 2015. (DE #26.) Thus, the motion is ripe for adjudication.

DISCUSSION

A case may be removed from state court to federal court if it is based on statutorily permissible grounds and if it is timely. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004).

See also 28 U.S.C. § 1441; 28 U.S.C. § 1446. The Seventh Circuit has directed that, "[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. Any doubt regarding jurisdiction should be resolved in favor of the states, and the burden of establishing federal jurisdiction falls on the party seeking removal." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (citations omitted). The party seeking removal must demonstrate that removal is proper. *Boyd*, 366 at 529. When challenged, the party seeking federal jurisdiction bears the burden of proving by a preponderance of the evidence that a case belongs in federal court. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006).

Diversity Jurisdiction

A case may be properly removed from state court to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. For diversity jurisdiction to exist, the parties are required to be diverse of citizenship, and the matter in controversy must exceed the sum or value of $75,000. 28 U.S.C. § 1332(a). Here, the parties' diversity of citizenship is not at issue. (DE #13, p. 1.) Rather, the dispute focuses on the amount in controversy. The proponent of federal jurisdiction bears the burden of proof that a claim meets the jurisdictional amount. *Sadowski*, 441 F.3d at 541. In satisfying this burden, a "party must do more than point to the theoretical availability of certain categories of damages."

8

*McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844-45 (7th Cir. 2009) (internal quotations omitted). However, "[t]hat is easier said than done when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims. In such a case, a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (citing *Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004)). Once the removing party has established the requisite amount in controversy, the case must be remanded "only if it is legally certain that the recovery (from the plaintiff's perspective) or cost of complying with the judgment (from the defendant's) will be less than the jurisdictional floor . . . ." *LM Insurance Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). The Seventh Circuit has emphasized that this "legal-certainty test sets the bar high for excluding federal subject-matter jurisdiction." *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011). If a party definitively wishes to prevent removal, he may stipulate to damages not exceeding $75,000. *Oshana*, 472 F.3d at 511-12; see also *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints . . . .") If a plaintiff does not do so, "the inference arises that he thinks his claim may be worth more." *Oshana*, 472 F.3d at 512 (citation omitted).

In its motion to remand, AeroDynamix argues that ICAS's notice of removal contains only a "speculative statement" that the amount in controversy could exceed $75,000 because it "simply attaches an arbitrary monetary amount to each air show in which Team AeroDynamix was prevented from performing" and that ICAS "simply invented the values it discusses in its notice of removal." In response, ICAS has submitted the affidavit of Mr. Cudahy who stated that he has personal knowledge, based on his familiarity with the air show industry, of the typical market rates for payment of performance groups such as AeroDynamix, which range from $8,000 to $15,000 per show. ICAS notes that AeroDynamix has specifically requested both compensatory as well as punitive damages (which may be awarded at up to three times the amount of compensatory damages awarded for the predicate tort), and, as such, the compensatory damages would need only be in excess of $18,750 total (or $1,250 per identified contract) to reach the $75,000 threshold. Because the typical market rate for performance groups per show is $8,000 at the low end of the range, ICAS argues that the minimum threshold will be satisfied.

The Court agrees with ICAS that it cannot be said with certainty that AeroDynamix's damages will not meet the threshold amount. Although AeroDynamix has argued in its reply brief that ICAS has failed to carry its burden in demonstrating that the amount in controversy has been satisfied because it "simply look[ed] to the allegations of the complaint and the defendant's

10

belief regarding those allegations," the Court disagrees. In *Kuhlman v. Walgreen Co.*, 2:10-CV-84, 2010 WL 1737849 (N.D. Ind. Apr. 26, 2010), a case on which AeroDynamix heavily focuses, this Court determined that the defendant's reliance on the general allegations of the plaintiff's complaint was insufficient to establish the requisite amount in controversy. *Kuhlman*, 2:10-CV-84, 2010 WL 1737849 at *4. The Court noted that the complaint had only indicated that the plaintiff was seeking "compensatory damages for injures 'some of which are permanent,' [and] 'loss of earnings and of future earning' due to a metal shelf falling onto [the plaintiff]" *Id*. Other than a few terms of art included in the complaint, the Court was "largely in the dark as to the nature and extent of Plaintiff's claimed injuries and required treatment." *Id*.

The present case is distinguishable from *Kuhlman* in two significant ways. First, AeroDynamix's complaint is sufficiently detailed with regard to its alleged damages. AeroDynamix alleges that, as a result of ICAS's defamatory transmissions and tortious interference with its contracts, it was deprived of the ability to fly in six air shows, with another nine air shows placed into jeopardy. While it is true that numerical figures were not included with each of the fifteen specifically identified contracts, this is a far cry from generally alleging vague "permanent injuries" or a "loss of earnings." AeroDynamix did not choose to reference harms from tortious interference generally.

11

Rather, it painstakingly listed fifteen specific instances wherein it was harmed contractually and requested compensatory and punitive damages for each (and, this is to say nothing of the five separate defamation counts). As noted by this Court, "[w]hile relying on general allegations of a complaint is insufficient to establish jurisdiction, reliance on specific allegations in a complaint can be sufficient to satisfy a removing party's burden." *Kuhlman*, 2:10-CV-84, 2010 WL 1737849 at *3.

Which brings us to the second difference between the instant case and *Kuhlman*. Here, in addition to pointing to the damages described within the complaint, ICAS looked outside of the pleadings and provided evidence to further quantify those references. The Seventh Circuit has explicitly stated that, in attempting to establish the amount in controversy, a defendant may rely on calculations from the complaint's allegations as well as "introduc[e] evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *Sadowski*, 441 F.3d at 541-42 (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005); *Rubel*, 361 F.3d at 1018-19). That is exactly what ICAS did. Mr. Cudahy's affidavit provides the necessary link towards establishing how much the allegations in the complaint are worth. AeroDynamix argues that the affidavit "arbitrarily values" its air show performances in a manner that is unacceptable for establishing the amount in controversy. However, as noted above,

an affidavit by the defendant's employee is an adequate method of doing so. This is distinguishable from *Kuhlman*, where the Court discounted the affidavit of the party's attorney who had attempted to "employ a sort of comparative analysis" by generally claiming that, "compared to other cases with similar claims, the instant allegations are enough to satisfy the amount in controversy." *Kuhlman*, 2:10-CV-84, 2010 WL 1737849 at *4. In this case, Mr. Cudahy has stated, based on his own personal knowledge of the industry, that the typical market rates for performance groups such as AeroDynamix range from $8,000 to $15,000 per performance. ICAS is not attempting to use Mr. Cudahy's affidavit to comparatively analyze this case to other cases with similar claims; it is using Mr. Cudahy's figures to provide a valuation of the exact types of contracts relevant to this particular case. AeroDynamix does not dispute the factual assertions made by Mr. Cudahy or provide any evidence of its own. It simply takes issue with ICAS's general methodology. But, for the reasons outlined above, this Court finds ICAS's methodology acceptable for providing a good-faith estimate of the damages at stake.

AeroDynamix also argues briefly that ICAS's estimate is based off of an improper measurement of damages because, under Indiana law, recoverable damages are measured by lost profits, not lost income. See e.g. *Turbines, Inc. v. Thompson*, 684 N.E.2d 254, 257-58 (Ind. Ct. App. 1997). While this is true, ICAS is not using the $8,000 to $15,000 figure to arrive at its jurisdictional threshold

13

total as AeroDynamix suggests; rather, it uses the extremely conservative calculation of $1,250 per show, and then (as is allowable) adds punitive damages of three times the amount of compensatory damages.[3] Based on Mr. Cudahy's affidavit testimony that typical market rates for performance groups such as AeroDynamix are in the range of between $8,000 to $15,000, ICAS's estimate is both plausible and supported by a preponderance of the evidence. See *Oshana*, 472 F.3d at 511. See also *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 96 (Ind. Ct. App. 2009) (identifying tortious interference with a contract as a tort where "all damages [that are] directly traceable to the wrong and arising without an intervening agency are recoverable" including lost profits; finding that, as to such damages, there is "no requirement of any particular degree of mathematical certainty in assessing damages, and where there is any doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer.") (internal quotation marks and citations omitted).

Based on the foregoing, the Court finds that ICAS has established the requisite amount in controversy by a preponderance of the evidence, and it cannot be said with legal certainty that AeroDynamix's recovery will be less than the jurisdictional floor.

---

[3] $1,250 per show x 15 shows = $18,750. $18,750 + (3 x $18,750) = $75,000. Thus, Aerodynamix's lost profits would need only be $0.01 over the $1,250 per show figure that ICAS uses to establish the requisite jurisdictional minimum.

See *LM Insurance Corp.*, 533 F.3d at 547. Therefore, ICAS's removal to federal court on the basis of diversity grounds was appropriate, and subject matter jurisdiction exists in this case. Because diversity jurisdiction exists, the Court need not address ICAS's additional arguments with regard to federal field preemption at this time.

CONCLUSION

For the reasons set forth above, the Motion to Remand to State Court, filed by the plaintiff, Those Amazing Performers, LLC, d/b/a Team AeroDynamix, on August 17, 2015 (DE #13), is **DENIED**.

**DATED: March 31, 2016**        **/s/RUDY LOZANO, Judge**
                                **United States District Court**